GUIDRY, J.
| ¡¡This is an appeal of a judgment granting the defendant’s, State Farm Mutual Automobile Insurance Company (State Farm), motion for summary judgment finding no genuine issue of material fact remained and that the State Farm Policy at issue did not provide coverage for the claims for damages made by the plaintiffs, Charlotte and William Campbell. After a thorough review of the record and the applicable law, we affirm.
This matter arises out of an automobile accident that occurred when Shane Estelle, a fifteen-year-old unlicensed driver, who had taken his grandfather’s Ford F150 company truck without permission, attempted to turn left without being able to see around an eighteen wheeler in front of him and collided with the Campbells’ vehicle. It is wholly undisputed that the accident was caused by the sole negligence of Shane Estelle. The truck Shane was driving was owned by Triad Control Systems, Inc., the employer of both his grandfather, G.W. Estelle, and his father, Kevin Estelle. At the time of the accident, Shane was living primarily with his grandparents during the school week and with his parents on the weekends, to facilitate his attendance at a school of their choice.
State Farm was added as a defendant in the Campbells’ suit for damages as the automobile liability insurer of a Nissan 1996 King Cab pickup truck owned by Shane’s parents, Kevin and Michelle Estelle. State Farm’s motion for summary judgment was based on its policy language that requires a “non-owned vehicle” to be in the lawful possession of the person operating it in order for coverage to apply. State Farm asserted that the 2001 Ford F160 truck, by policy definition, was not a “non-owned vehicle,” and that the evidence established that it was not in the lawful possession of Shane when he was operating it at the time of the accident. The trial court, Rafter hearing evidence presented from both sides, agreed with both contentions and granted the summary judgment.
The State Farm policy issued to Kevin and Michelle Estelle introduced as evidence in the record provides in pertinent part:
Non-Owned Car — means a car not owned by, registered to or leased to:
1. You, your spouse;
[[Image here]]
*418 4. An employer of you, your spouse or any relative.
* * *
A non-owned car must be a car in
the lawful possession of the person operating it.
(Bold in original; additional emphasis added).
With respect to the vehicle qualifying as a “non-owned” vehicle under the policy language, the trial court in oral reasons stated:
Now, the policy defines a non-owned car means one not owned by, registered or leased to you or your spouse, any relative, any other person residing in your household, or an employer of you, your spouse or any relative; and a non-owned car must be a car in the lawful possession of the person operating it, ... Both sides seem to concede in argument that this is a non-owned car; however, I’ve got a question whether or not it meets that definition since it was owned by the employer of the named insured, Kevin Estelle. But even assuming for the sake of argument this is a, quote, non-owned car ...
The transcripts of the arguments by counsel at the hearing before the trial court are not in the record before us; however, we note that in brief, State Farm continues to maintain that the Ford F150 truck was not a non-owned vehicle within the policy definition. To the extent that may still be an issue, we agree with the trial court’s conclusion. A straightforward application of the very clear language of the policy establishes that the ^vehicle, owned by the employer of the insured, in this case, Kevin Estelle, is not a “non-owned” vehicle within the scope of State Farm’s policy, and on that basis alone, coverage would not apply.
However, the record also fully supports the trial court’s findings. Even assuming for the sake of argument that the vehicle could qualify as a non-owned vehicle, that coverage still would not apply because the vehicle was not lawfully in the possession of the person operating it. First and foremost, the record conclusively establishes that Shane was fifteen at the time and was an unlicensed driver. On this basis alone, his possession and operation of the vehicle was not lawful. Furthermore, as also correctly found by the trial court, the record conclusively established that Shane was operating the vehicle knowingly without permission, adding to the unlawfulness of his possession. Specifically, we note the following uncon-tradicted testimony regarding whether Shane had permission, or even the belief that he had permission, which amply supports the trial court’s conclusion that the answer is a “resounding ... no.”
The grandfather, G.W. Estelle, testified, “nobody really drove that truck other than myself ... it just wasn’t any question about it.” He also stated that Shane “had asked me to drive the vehicle before and I wouldn’t let him,” and that “Shane knew he didn’t have permission to drive the vehicle.” According to G.W., “[he] knew better.” Linda Estelle, Shane’s grandmother often allowed him to drive her own personal vehicle, an Infinity SUV, with her, and on one or two occasions allowed him to drive it alone only on their one-street subdivision. However, she said he did not have permission to take the vehicle and “not one time did it cross [her] mind that he would ever take a vehicle without our knowledge.” When asked if she thought Shane might have believed he had permission, she replied, “Oh, Rno.” Shane’s mother, Michelle Estelle, testified that “[Shane] did not have permission” to drive the truck, and that “no one was allowed to drive that truck.” Even Shane *419 himself flatly admitted that he did not have, and knew he did not have, permission to ever drive his grandfather’s truck. In fact, in relaying the incident to his parents and grandparents, Shane admitted that he sat in the truck for almost ten minutes debating on whether or not he should take it, as he knew he did not have permission and should not be driving it.
Plaintiffs’ contention on appeal that there is a genuine issue regarding whether Shane had permission, and that the trial court erroneously made credibility determinations in granting the summary judgment is wholly without merit. The only evidence offered to contradict State’s Farm showing that Shane did not have permission was the testimony of a friend of Shane, and of that friend’s mother, to the effect that they had seen Shane driving, alone, in his grandmother’s vehicle and possibly another vehicle, and they assumed he had permission. Even if taken as true, this testimony does nothing to create a genuine issue of material fact. Neither Shane’s friend nor her mother had any involvement whatsoever with whether Shane had permission to drive or not, and their assumptions that he did prove absolutely nothing and do not contradict State Farm’s conclusive evidence to the contrary.
Accordingly, the judgment of the trial court is affirmed. Plaintiffs are assessed all costs of this appeal.
AFFIRMED.
WHIPPLE, J., concurs, with reasons assigned.